IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| DANA LEE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No.** |
| v. | ) | **3:07-CV-108-JTC** |
| | ) | |
| ETHAN ALLEN RETAIL, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT ETHAN ALLEN'S MEMORANDUM OF LAW IN SUPPORT
OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Defendant Ethan Allen Retail, Inc. ("Defendant" or "Ethan Allen")
employed the Plaintiff Dana Lee ("Plaintiff") as a commissioned Design
Consultant in Peachtree City, Georgia from August 6, 2006 until November 1,
2007.  On November 19, 2007, Ms. Lee brought this action claiming she was
denied overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201, *et. seq.*

Plaintiff alleges that Defendant misclassified her as exempt from overtime
under the FLSA.  (See Complaint, Docket Entry No. 1 at ¶ 45.)  Plaintiff alleges
she was not exempt from overtime as an outside salesperson.  (Id. at ¶¶ 30-34; 29

1

U.S.C. § 213(a)(1).)  She also claims she did not qualify for the retail or service commission exemption contained in 29 U.S.C. § 207(i) ("7(i)").  (Id. at ¶¶ 41-42.)

Plaintiff does not claim all of Ethan Allen's Design Consultants are non-exempt under 7(i).  Rather, Plaintiff alleges she "always or almost always earned the same fixed individually pre-determined compensation amount each period," and as a result, she was non-exempt.  (Id. at ¶¶ 38, 41.)  She claims that because her compensation never changed, she was not paid on a "bona fide commission plan."  (Id. at ¶ 41.)  Finally, Plaintiff alleges that she "worked in excess of forty hours per workweek," but was not paid overtime.  (Id. at ¶¶ 21, 43.)

Based on the discovery in this case, Plaintiff was exempt from overtime under the retail or service and outside sales exemptions as a matter of law.  (See Docket Entry No. 11.)  Based on the nature of Ethan Allen's business, the hours Plaintiff worked and her compensation, Ethan Allen met the 7(i) exemption's requirements: (1) Plaintiff was employed in a retail establishment; (2) more than half of her compensation consisted of commissions; and (3) her regular rate of pay was in excess of one and one-half times the applicable minimum wage.

Plaintiff cannot dispute that Ethan Allen satisfies each 7(i) requirement. Instead, relying entirely on a Department of Labor ("DOL") Regulation interpreting 7(i), Plaintiff asserts the novel argument that she does not qualify for the exemption because she was never paid commissions in excess of her bi-weekly

commission advances and thus was not paid pursuant to a "bona fide commission plan" as defined by the Secretary of Labor.  (See 29 C.F.R. § 779.416(c) ("416(c)".)  In Plaintiff's view, the entire 7(i) exemption turns on the applicability and the interpretation of 416(c), and not on the 7(i) requirements themselves.

Plaintiff cannot prevail under this theory.  Neither Defendant nor this Court is bound by 416(c) when interpreting the 7(i) exemption.  More importantly, Ethan Allen's plan is a "bona fide commission plan."  The Plaintiff cannot point to a single reported case or Wage and Hour Opinion Letter concluding that a commission plan with recoverable advances on commissions such as Ethan Allen's was not "bona fide" under either 7(i) or 416(c).

After an introductory period, Ethan Allen's compensation plan was 100% commission-based with a recoverable advance.  Plaintiff's "earnings" changed every month.  Accordingly, by definition, Ethan Allen's plan is a straight commission pay plan with advances and a "bona fide commission plan" under 7(i).  Plaintiff's entire case is predicated on a misunderstanding of the legal definition of a "bona fide commission plan" under 7(i) and 416(c).  Accepting Plaintiff's interpretation of 416(c) would lead to the absurd result that a type of commission plan expressly authorized by the DOL: "straight commissions with advances," would be precluded from qualifying under 7(i).

Summary judgment is also appropriate on the outside sales exemption, 29 U.S.C. § 213(a)(1).  To be exempt as an outside salesperson, Plaintiff need only be: (1) primarily engaged in sales; and (2) customarily and regularly engaged away from the employer's place of business in performing sales duties.  The amount of Plaintiff's pay and hours she worked has no bearing on this exemption.

Plaintiff regularly and on a weekly basis engaged in sales activity for several hours at customers' homes away from Ethan Allen's Design Center.  These home visits involved hours of time preparing and following-up with customers as essential parts of selling a project to furnish a portion of or an entire room or dwelling.  Most of the sales dollars Plaintiff generated were indeed the result of home visits.  Finally, Plaintiff admits that her primary duty was sales of Ethan Allen's home furnishing products.

## II.     ARGUMENT AND CITATION OF AUTHORITY

In general, employers must pay time-and-a-half (overtime) for all hours worked over forty in a workweek.  (See 29 U.S.C. § 207(a)(1).)  However, the FLSA includes exemptions from its overtime requirement for individuals working in certain fields, including employees working for a "retail or service establishment" and those employed in "outside sales."  (See 29 U.S.C. §§ 207(i) ("7(i)"); 213(a)(1).)

**A. This Case Is Appropriate For Resolution Under Rule 56(c).**

Whether an employee is exempt under the 7(i) or outside sales exemptions is an issue of law that is ripe for summary judgment.  See <u>Klinedinst v. Swift Invs., Inc.</u>, 260 F.3d 1251, 1254 (11th Cir. 2001) (whether an employee's payments constituted commissions under 7(i) "is an issue of law"); <u>Stevens v. SimplexGrinnell, LLP</u>, 190 Fed. Appx. 768 (11th Cir. 2006) (holding that district court properly granted summary judgment to employer where record established that employee worked as outside salesperson exempt from the FLSA).

**B. Plaintiff Is Exempt From The FLSA's Overtime Requirements Under 7(i.)**

7(i) provides that:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.   In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

(<u>See</u> 29 U.S.C. § 207(i).)  Ethan Allen must show that: (1) Plaintiff was employed by a "retail or service establishment"; (2) more than half of Plaintiff's compensation was represented by commissions; and (3) Plaintiff's regular rate of

pay was in excess of one and one-half times the minimum wage.  In this case, all three elements are satisfied.

Plaintiff admits that Ethan Allen is a retail establishment,[1] (See Complaint at ¶ 11; PL. DEP. at 136, line 20) that she was only paid commissions and was not paid a salary.[2]  (See Complaint at ¶¶ 35-36.)  Therefore, Ethan Allen meets the first two elements of 7(i).  Defendant must therefore only show that Plaintiff was paid more than one and one-half times the minimum wage to establish the exemption.

1. **Lee's regular rate of pay was always in excess of one and one-half times the minimum wage.**

An employee's "regular rate" is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed" and "by its very nature must reflect **all payments** which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."[3]   29

---

[1] The DOL Regulations define "retail or service establishment" as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."  29 C.F.R. § 779.24. 100% of Ethan Allen's annual dollar volume of sales of goods are sold on a retail basis.  (See Affidavit of Corey Whitely, attached to Statement of Facts as Ex. B)

[2] Plaintiff admits that she was always paid on a commission basis (PL. DEP. at 61, lines 9-14; 62, line 18; See Complaint at ¶ 36) and that she was never paid a salary.  (See Complaint at ¶ 35; PL. DEP. at 61, lines 16-1; 62, line 14.)

[3] The regular rate is determined by dividing the **total payments** by the total number of hours worked.  See 29 C.F.R. § 778.118 (citing Overnight Motor Co. v. Missel, 316 U.S. 572 (1942)) (emphasis added).  As the "regular rate" is determined by "total payments," all forms of compensation, including "commissions, any part of a draw that exceeds commissions, and supplemental payments," must be included.  (See Wage and Hour Field Operations Handbook, Section 21h03(b), attached hereto as Ex. A.)

C.F.R. § 779.419(b) (citing <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419 (1945)) (emphasis added).  Plaintiff's "total payments" were her weekly advance of $550.[4]  (PL. DEP. at 15, lines 3-7.)  To determine Plaintiff's "regular rate of pay" based on her bi-weekly advance, the Court must determine the number of hours worked each week, which changed on a weekly basis.[5]

Plaintiff reported the number of hours she worked on a bi-weekly basis, doing her "best to report the hours that [she] worked."[6]  (PL. DEP. at 78-79, line 21-line 8; 186, lines 11-12; 83, lines 19-20.)  The most hours Plaintiff ever reported working was 43.07 hours in a week.  (<u>See</u> Timecards for Dana Lee, Ex. 7 to Plaintiff's Deposition, attached to Statement of Facts as Ex. A, entry for pay period 10/29/2006-11/11/2006, Bates No. EA 000096.)  Based on her "total payments" of $550/week, Plaintiff earned $12.77/hour that week.  During that

---

[4] This $550 constitutes the commissions that she earned through her sales, as well as the remainder of the draw that exceeded her earned commissions.  Plaintiff never received any "supplemental payments."

[5] Because the number of hours Plaintiff worked changed each week, she is precisely the type of sales person to whom 7(i) is designed to apply.  Employers are exempted from FLSA's minimum wage and overtime where their employees "work irregular hours -- sometimes more than 40 in one week -- but they do not do so out of desperation, nor are they taking jobs away from people who would prefer to work fewer hours."  <u>Mechmet v. Four Seasons Hotels, Ltd.</u>, 825 F.2d 1173, 1176-1177 (7th Cir. 1987.)

[6] Indeed, Plaintiff went back over her time and even made modifications to accurately reflect her hours worked.  (PL. DEP. at 186, lines 6-15).  Ethan Allen's compensation plan, which Plaintiff signed and agreed to at the beginning of her employment, states that "[e]ach employee must accurately fill out his/her time card, and submit it at the end of each workweek" in order to get paid.  (PL. DEP. at 13, lines 3-4; 80-81, line 25-line 3; <u>See</u> Ethan Allen Design Consultant Compensation Plan, Ex. 3 to Plaintiff's Deposition, attached to Statement of Facts as Ex. A.)

week, the applicable minimum wage was $5.15/hour.  Accordingly, one and one-half times this rate equals an hourly rate of $7.73/hour.  Thus, her hourly rate far exceeded the time-and-a-half requirement.

Therefore, according to Defendant's time records Plaintiff's "total payments" were "consistently and obviously higher than required to meet the test." (See Wage and Hour Field Operations Handbook, Section 21h03(a), attached as Ex. A.)  When this is the case, a week-by-week examination demonstrating that Plaintiff never earned less than one-and-one-half times the minimum wage is not required to comply with this element of 7(i).  See Id. (a "week-by-week determination of the regular rate for purposes of Section 7(i) is not necessary if the earnings are consistently and obviously higher than required to meet the test").

Nevertheless, Plaintiff now claims that despite her "best efforts," she did not report all of her hours worked.[7]  (PL. DEP. at 84, lines 10-13; 91-92, line 20-line 9.)  Plaintiff is claiming approximately 140-190 hours of unreported "overtime"

---

[7] Plaintiff admits that she does not have any documents disputing her self-reported time sheets; nor does she have any independent recollection of her hours worked in any given day, week, month or year.  (PL. DEP. at 66, line 14; 75, lines 8-24; 78, lines 4-9.)  Accordingly, Plaintiff's "proof" of additional time worked is limited to a guess as she has no recollection of even what days or hours she worked.  (PL. DEP at 75, lines 11-15.)  "[S]peculative accusations do not create an issue of material fact in the absence of supporting evidence."  Monday v. Group Ben. Plan for Emple.of the Martin Brower Co., 2007 U.S. Dist. LEXIS 94919 (N.D. Ga. Dec. 28, 2007).  See also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.); Perkins v. Compass Group USA, Inc., 512 F. Supp. 2d 1296, 1305 (N.D. Ga. 2007) ("Plaintiff's mere speculation . . . does not raise a genuine issue of material fact").

during her fourteen months of employment.  Over fourteen months, this averages to 2.3 to 3.2 hours per week.  If the Court were to add 3.2 hours to the highest weekly total reported by Plaintiff throughout her employment (43.07), Plaintiff still only worked 46.27 hours and was paid $11.89 per hour ($550/46.27), well above the $7.73/hour time-and-a-half minimum rate.

There is no evidence Plaintiff ever worked more than 60 hours in <u>any</u> week. If Plaintiff did on occasion work 60 hours in a week, she still earned in excess of one and one-half times the minimum wage since she would have been paid $9.17/hour ($550/60).[8]  Thus, based on the time records and Plaintiff's rank speculation of her off-the-clock hours, she did not work enough hours in <u>any</u> workweek to be paid less than one and one-half times the minimum wage.

### 2.  Ethan Allen's commission plan is a "bona fide commission plan"

#### a. Ethan Allen's "bona fide" commission plan satisfies Congress's purpose in promulgating the 7(i) exemption.

By utilizing the term "bona fide," Congress "apparently envisions a smell test, one that reaches beyond the formal structure of the commission rate and into its actual effects and the purpose behind it."  <u>Erichs v. Venator Group, Inc.</u>, 128 F. Supp. 2d 1255, 1260 (N.D. Cal. 2001).  Congress's purpose in adopting the 7(i)

---

[8] Plaintiff also said she probably never worked more than 65 hours in a workweek.  (PL. DEP. at 133, line 3.)  Even if Plaintiff worked 65 hours in a given week, her hourly rate would have been $8.46/hour which still exceeds the $7.73/hour time-and-a-half requirement.

exemption was to "ensure that employers use a commission rate that has the ability to affect one's pay." Herman v. Suwanee Swifty Stores, Inc., 19 F. Supp. 2d 1365, 1371 (M.D. Ga. 1998). If the employees have "a meaningful opportunity to elect to work more hours in exchange for higher pay," then Congress's purpose of the 7(i) exemption is satisfied and the plan is "bona fide." Erichs, 128 F. Supp. 2d at 1260; see also Herman ("The whole premise behind earning a commission is that the amount of sales would increase the rate of pay. Thus, employees may elect to work more hours so they can increase their sales, and in turn, their earnings.") As long as a pay plan "incentivizes [the salesperson] to 'hustle' to finish [his] job in order to obtain a larger number of jobs for greater compensation, . . . a commission system is present." Klinedinst, 260 F.3d at 1254-55.

Erichs demonstrates that the Congressional purpose behind the 7(i) exemption determines whether or not a compensation plan is "bona fide." Under the plan in Erichs, "when sales levels advanced a manger's commissions beyond" a certain level, "the marginal utility of further efforts by the manager to increase store sales shrunk  . . . to a negligible level unlikely to induce him or her to devote further time to increasing sales." Erichs, 128 F. Supp. 2d at 1261. The court found this compensation plan not to be "bona fide."  Thus, if there is a "cap" on commissions where the salesperson no longer has an incentive to increase sales, the commission plan is not "bona fide." Ethan Allen's plan does not have a cap on

the commissions that can be earned.  (PL. DEP. at 60, lines 10-13.)  Increased sales are rewarded with even higher commission rates.[9]  (See Plaintiff's Depo. Ex. 3; PL. DEP. at 17, lines 16-18.)  Moreover, there is no minimum threshold of sales required before earning commissions as design consultants earn commissions based on the very first dollar of sales.  (PL. DEP. at 60, lines 19-22.)

Ethan Allen's recoverable draw plan "has the ability to affect one's pay" as the number of sales made completely determines pay.  See Erichs, 128 F. Supp. 2d at 1259-60 (where employees' pay varies from the guarantee, the plan is a bona-fide commission plan.)  In Viciedo v. New Horizons Computer Learning Ctr. of Columbus, LTD., 246 F. Supp. 2d 886, 897 (S.D. Ohio 2003), the Court held that the company's "Level II" compensation plan constituted a "bona fide compensation plan" because the employees' "compensation is based entirely on a percentage of the amount the [employee] collects from sales on a monthly basis." Id.  Ethan Allen's plan is precisely this type of "bona fide" commission plan.

### b. Ethan Allen's "straight commission with advance" plan is "bona fide" and explicitly contemplated by the DOL.

The DOL Regulations expressly recognize a straight commission with "advances," "guarantees" or "draws" plan as a "bona fide" plan under § 207(i.).  29

---

[9] If a Design Consultant makes more than $45,000 in sales in a month, the commission percentage increases above the 7% rate applicable to sales under $45,000.  (See Plaintiff's Depo. Ex. 3.)  If a consultant has more than $55,000 or $70,000 in sales in a month, the commission percentage increases again at each level.  (Id.)

C.F.R. § 779.413; <u>Bowman v. Builder's Cabinet Supply Co.</u>, 2006 U.S. Dist.

LEXIS 62712, at *21 (E.D. Ky. Aug. 23, 2006.) ("By definition, except for the

'straight salary or hourly rate', each of these compensation plans [mentioned in 29

C.F.R. § 779.413] qualify as bona fide commission plans").  Ethan Allen's straight

commission plan with a draw has never come under question.  It is a plan that is

used in many industries selling big-ticket items.  (WD at 93-94, line 21-line 3.)

Ethan Allen paid its Design Consultants on a "straight commission with

'advances,' 'guarantees' or 'draws'" plan.  "A straight commission plan generally

requires that compensation be based on a flat percentage of sales."  29 C.F.R. §

779.413(a)(4).  If sales employees are paid exclusively based on a percentage of

sales, such pay plans are considered "straight commission plans."  <u>See</u> <u>Lilley v.</u>

<u>BTM Corp.</u>, 958 F.2d 746, 749 (6th Cir. 1992) (a position selling products for a

five percent commission on sales is "compensated on straight commission").[10]

In this instance, after her introductory period, Ethan Allen paid Plaintiff a bi-

weekly recoverable draw as an "advance" on future commissions.  (<u>See</u> Complaint

_____

[10] <u>See</u> <u>also</u> <u>EEOC v. Zippo Mfg. Co.</u>, 713 F.2d 32, 33 (3d Cir. 1983) (Zippo pays its DMs a "straight commission" where they are paid based on a percentage of sales and bonuses based on sales); <u>Donovan v. Highway Oil, Inc.</u>, 1986 U.S. Dist. LEXIS 22560 at *10 (D. Kan. July 18, 1986) (where managers and assistant managers of gas stations did not earn a commission until their sales reached above a certain quota, commission plan was not considered a "straight commission plan" because a minimum sales goal had to be reached before the managers earned commissions; however "[i]f the employees were paid strictly an amount per gallon basis, then a straight commission plan would exist"); <u>Garrett v. Phillips Mills, Inc.</u>, 721 F.2d 979, 980 (4th Cir. 1983) (employee was paid on "straight commissions" basis where pay was based "solely on his sales performance" even though he was "provided . . . a draw against his earned commissions of $2,000.00 per month".)

at ¶ 37; PL. DEP. at 17, line 6; 20, line 9; 61, line 14.)   A plan still qualifies as a "straight commission plan" even if there is a recoverable advance.   See   29 C.F.R. § 779.413(a)(5).   Recoverable draw plans satisfy the commission element of the 7(i) exemption.   29 C.F.R. § 779.416(b) (an employee who is paid a guarantee or draw against commissions . . . under which the computed commissions vary in accordance with the employee's performance on the job will qualify for exemption provided the conditions of 7(i)(1) are met as explained in § 779.419).[11]

29 C.F.R. §779.416 (a) reiterates this point.   A stipulated sum such as an advance or draw

> can never represent commissions . . . if it is actually paid as a salary.  If, however, it appears . . . that the stipulated sum is not so paid and that it actually functions as an integral part of a true commission basis of payment, then such compensation may qualify as compensation which represents 'commissions on goods or services.'

The advances are fully recoverable.  Plaintiff admits Ethan Allen never paid her a salary.  (See Complaint at ¶ 35; PL. DEP. at 61, lines 16-1; PL. DEP. at 62, line 14.)  Thus, all of Plaintiff's earnings were "commissions."[12]

---

[11] § 779.419 states the requirement that the employee's "regular rate" of pay must be more than one and one-half times the minimum hourly rate applicable to him from the minimum wage provisions."

[12] During the first four months of Plaintiff's employment, her draws were non-recoverable.  (PL. DEP. at 47, line 17; See Plaintiff's Depo. Ex. 3.)  She still received a bi-weekly draw, but did not accumulate deficits for the amount of the draw above the amount of commissions earned through sales.  (PL. DEP. at 58, lines 15-24.) Consultants can and do still earn commissions over and above their draw.  (PL. DEP. at 49, line 4.)  As such, even though the draws are non-recoverable, the commission plan remains a "straight commission with draws" plan, as defined by 29 C.F.R. §

### c. Ethan Allen's commission plan follows 29 C.F.R. § 779.416(c) as employees never earn the same fixed amount of compensation each workweek.

Plaintiff alleges that Ethan Allen's compensation plan fails to satisfy the DOL's definition of a "bona fide compensation plan" based on the Secretary of Labor's interpretation of 7(i) contained in 29 C.F.R. § 779.416(c). The DOL Regulation states that commission plans are not "bona fide" if

> the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee). Another example of a commission plan which would not be considered as bona fide is one in which the employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment or department can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota.

29 C.F.R. § 779.416(c) (emphasis added).

---

779.413. The consultants are still "paid a fixed . . . biweekly . . . draw." 29 C.F.R. § 779.413. In addition, "at periodic intervals a settlement is [still] made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid." Id. That the draw is non-recoverable because no deficit is carried forward during the first four months, therefore, does not affect the conclusion that all of the consultants pay is made up of "commissions" under a "straight commissions with draw" plan. The Regulations do not mention maintenance of a deficit as a requirement of an exempt commission plan. The Regulations only require that draws be supplemented by additional earned commissions. Ethan Allen's commission plan supplements draws during the first four months just as it does thereafter. (PL. DEP. at 49, line 4.) As a result, all of the consultants' earnings, even during the first four mounts where they receive a non-recoverable draw, constitute "commissions" according to the applicable regulations. See Herman, 19 F. Supp. 2d at 1370 ("even commissions which do not exceed the guarantee will still be counted as commissions"); 29 C.F.R. § 779.416(b) ("under a bona fide commission plan all of the computed commissions will be counted as compensation representing commissions even though the amount of commissions may not equal or exceed the guarantee or draw in some weeks".)

### 1.   § 416(c) does not impose additional requirements or substantively modify 7(i).

§ 416(c) is the Secretary of Labor's "direction as to what it considered would not constitute a 'bona fide' commission rate." <u>Herman</u>, 19 F. Supp. 2d 1365 at 1371-72.  § 416(c) "does not impose additional requirements or substantively modify section 7(i)." <u>Id.</u> at 1372.  Plaintiff's attempt to make 416(c) an additional substantive requirement of 7(i) should be rejected.[13]

### 2.   Plaintiff misconstrues 416(c).

According to 416(c), a commission plan is not "bona fide" if an employee "always or almost always **earns** the same fixed amount of compensation for each workweek."  29 C.F.R. § 416(c) (emphasis added).  Plaintiff argues that because she was always *paid* the same amount of advanced commissions, Ethan Allen's commission plan runs afoul of 416(c).  Plaintiff's allegation that she was *only paid* the same $1100 in pay each two-week pay period throughout her employment at Ethan Allen is not disputed.  (<u>See</u> Paychecks of Plaintiff Dana Lee, Depo. Ex. 3 (P0286-0307).)  The $1100 represents $550 per week in recoverable commission advances.  (PL. DEP. at 15, lines 3-7.)  Plaintiff only took home her recoverable

---

[13] The DOL's interpretation of 416(c) is not binding on this Court.  While "interpretive and opinion letters by the Department of Labor (such as 416(c)) constitute a body of experienced and informed judgment" which courts "will give . . . substantial weight," they "do not per se bind the court." <u>Samson v. Apollo Resources, Inc.</u>, 242 F.3d 629, 638 (5th Cir. 2001); <u>see</u> <u>also</u> <u>Pugliese v. Pukka Dev., Inc.</u>, 524 F. Supp. 2d 1370, 1374 (S.D. Fla. 2007) ("It is the statutes' unambiguous, plain language - and not the opinion letter - that binds this Court").  Therefore, the Court is free to ignore the DOL's definition of a "bona fide commission plan" in 416(c).

commission advance each week because she was unable to earn a significant enough amount of commissions to eliminate her cumulative deficit. (PL. DEP. at 59, lines 20-21.)  However, while the amount *paid* to Plaintiff stayed the same each pay period, the amount *earned* did not.  The Regulation does not use the term "paid."  Plaintiff fails to grasp that although an individual "earns" compensation, this does not necessarily mean that compensation is "paid" when it is earned.

Indeed, Plaintiff was paid recoverable commissions in advance <u>before</u> earning them. (PL. DEP. at 17, line 6; 20, line 9; 61, line 14; Complaint at ¶ 37.) The payments were recovered by carrying forward any cumulative deficit. (PL. DEP. at 20, lines 24-25; TD at 41, line 25).  Design Consultants do not actually "earn" the recoverable draw they are paid on a bi-weekly basis until they earn enough commissions to cover those draws.  Simply because the draw is *paid* in advance does not mean that is *earned*.[14]

---

[14] Plaintiff's theory that Ethan Allen's commission plan is not "bona fide" is wholly dependent on the Court adopting her legal theory that there is no distinction between "paid" and "earned." If this were indeed the case, then in any commission plan that pays an advance, the commission plan would not be "bona fide" under 416(c) with respect to any employee that regularly fails to earn enough in commissions to exceed the amount of the advance.  This scenario is impossible as the Regulations explicitly outline methods of compensation that satisfy 7(i) and include advances.  (<u>See</u> 29 C.F.R. § 779.413 (discussed in Section III.A.2.b. above).)  Furthermore, if Plaintiff's theory were correct, Ethan Allen could have made its commission plan "bona fide" merely by varying the amount of the draw paid to her each week.  For instance, instead of paying her $550 each week in recoverable advances, Ethan Allen could have paid her $450 every other week and $650 every other week.  While Plaintiff would have been paid an identical amount of advances, the commission plan would be "bona fide" where it was not when it paid her $550 each week.  This result is patently absurd.  The DOL's use of the term "earns" rather than "paid" avoids these non-sensical results.

### 3.   Ethan Allen's commission plan is "bona fide" even under Plaintiff's construction of 416(c).

Under 416(c), Ethan Allen's commission plan is still "bona fide" because Plaintiff never *earned* the same fixed amount of compensation each workweek as: (1) her sales varied; and (2) she earned more than her draw in four months during her employment.

Plaintiff earned a commission whenever she made a sale.  (PL. DEP. at 60, lines 19-22.)   As Plaintiff's sales varied each week, her commission earnings varied each week.  (TD at 40, line 18; 41, line 16; see also Plaintiff's Commission Sales Reports, Plaintiff's Depo. Ex. 3).  Consequently, Plaintiff never "earned" the same fixed amount of commissions in each workweek.

Furthermore, in four months during Plaintiff's employment, she admitted her earned commissions exceeded the amount of her monthly advances.[15]  (PL. DEP. at 47, line 5; TD at 42, line 13; see also Plaintiff's Commission Reports, Ex. 3 to Plaintiff's Depo.)  On these occasions, Plaintiff's cumulative deficit was reduced by the amount of commissions she earned above the amount of her advances.  (PL. DEP. at 45, line 7.)  Because Plaintiff always carried a cumulative deficit (TD at 40, line 25), she was never actually paid any commission payments beyond her advances.  (PL. DEP. at 59, lines 20-21; See Complaint at ¶ 39.)

---

[15] This occurred in January, February, April and October 2007.  (TD at 42, lines 17-18).

### 4.    All of the commission plans invalidated by § 416(c) are completely distinguishable from Ethan Allen's.

Ethan Allen's commission plan is distinguishable from every plan that has been invalidated by 416(c).  Plaintiff relies on Herman v. Suwanee Swifty Stores, Inc., 19 F. Supp. 2d 1365, 1371-72 (M.D. Ga. 1998) to support her argument.  (See Plaintiff's Initial Disclosures, Docket Entry No. 13).  In Herman, the Court held that the employer "did not comply with the requirements of section 7(i) for any store managers who never received more than the **guaranteed** rate or received the guaranteed rate only once a year."[16]  Id. at 1372 (emphasis added).  Plaintiff principally relies on Herman to challenge Ethan Allen's compensation plan.  (See Initial Disclosures, Docket Entry No. 13 at p. 2.)

Herman is entirely distinguishable for two reasons.  First, unlike here, the draw paid in Herman was guaranteed and not recoverable.  Herman, 19 F. Supp. 2d at 1367.  Second, here, unlike in Herman, Plaintiff did earn commissions that exceeded her draw in four of the fourteen months she was employed.

416(c) states that commission plans are not bona fide "where the computed commissions seldom or never equal or exceed the amount of the draw or **guarantee**."  29 C.F.R. § 416(c).  Unlike the instant case, because the draw in

---

[16] The court in Herman opined that the purpose behind the 416(c) "always or almost always" requirement is to ensure that employers cannot simply set a "commission rate to ensure that their employees' pay would never meet the guaranteed rate, thus protecting themselves from paying overtime consistent with the purposes of the Act."  Id. at 1371.

<u>Herman</u> was guaranteed, it was possible for employees to "in fact, always or almost always [earn] the same fixed amount of compensation for each workweek" if the employees did not earn commissions in excess of the guaranteed draw.  <u>See</u> 29 C.F.R. § 779.413.  However, § 416(c) is inapplicable to **recoverable** draw plans such as Ethan Allen's where there is no "guarantee" at all.  (<u>See</u> Complaint at ¶ 37.)  Even if the Court were to adopt Plaintiff's absurd interpretation of 416(c), Plaintiff would nevertheless qualify for the exemption because she earned commissions in excess of her draw during four of fourteen months.[17]

### C. Plaintiff Is Exempt From The FLSA's Overtime Requirements Under The Outside Sales Exemption

The FLSA exempts from its overtime provisions "any employee employed . . . in the capacity of outside salesman."  29 U.S.C. § 213(a)(1.)  The Department of Labor ("DOL") Regulations define an employee employed in the capacity of outside salesman as one whose

> primary duty is making sales or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and who is customarily or regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500.  Plaintiff is exempt because her primary duty was making sales or obtaining orders and she customarily or regularly engaged away from Ethan Allen's place of business.

---

[17] Even the DOL in <u>Herman</u> conceded that five weeks out of a year are sufficient to satisfy 416(c).  <u>See Herman</u>, 19 F. Supp. 2d at 1372.

**1.  Lee's primary duty was to make sales.**

Plaintiff admits that her primary job duty was to sell Defendant's products. (PL. DEP. at 136, lines 15-16; <u>See</u> Complaint at ¶ 23.)  In addition, "activities employees perform that are incidental to their outside sales or solicitations . . . qualify as exempt outside sales work."  (<u>See</u> Wage and Hour Div. Op. Letter 2006-11, March 31, 2006 (citing 69 Fed. Reg. 22,160, 22,163 (Apr. 23, 2004), attached hereto as Ex. B).)  Accordingly, any tasks performed by Defendant's Design Consultants were in pursuit of their sales efforts.[18]  (<u>See</u> Statement of Material Undisputed Facts, ¶¶ 5-15.)

**2.  Lee was customarily or regularly engaged away from the Design Center in performing her sales duties.**

The DOL Regulations define an employee who works "away from the employer's place or places of business" as "an employee who makes sales at the customer's place of business or . . . at the customer's home."  29 C.F.R. § 541.502; <u>see</u> <u>also</u> <u>Billingslea v. Brayson Homes, Inc.</u>, 2006 U.S. Dist. LEXIS 11707 (N.D. Ga. Mar. 7, 2006) (the purpose of the outside sales exemption is to exempt individuals that "make [their] living by calling on customers at their place of

---

[18]  Plaintiff's primary duty was making sales throughout her employment with Defendant, including the initial four month period when she earned a non-recoverable draw.  Plaintiff admits that during these four months, she made sales and earned commissions just as she did throughout the remainder of her employment at Ethan Allen.  (PL. DEP. at 49, line 4.)

business or home"). Ethan Allen's Design Consultants customarily and regularly

work at customers' homes as part of the sales process.

     The DOL regulations define "customarily and regularly" as "a frequency

that must be greater than occasional but which, of course, may be less than

constant. Tasks of work performed 'customarily and regularly' includes work

normally and recurrently performed every workweek; it does not include isolated

or one-time tasks." 29 C.F.R. § 541.701 (cited and applied by this Court in

Billingslea, 2006 U.S. Dist. LEXIS 11707 at *12).[19]

     In a 2007 Opinion Letter, the Wage and Hour Division concluded that real

estate salespeople who "performed most of their duties" in a model home which

was considered to be the employer's place of business "but were required to leave

the home for one or two hours a day, once or twice a week, to engage in selling or

sales-related activities" were exempt outside salespeople who were "customarily

and regularly engaged away from the employer's place of business".[20] (See Wage

and Hour Div. Op. Letter 2007-2, January 25, 2007 ("FLSA 2007-2", attached

hereto as Ex. C).) A significant portion of the rest of the salespeople's time was

---

[19] 29 C.F.R. § 541.701 has been applied by this court to find that plaintiffs meet the "customarily and regularly engaged" requirement. See Billingslea, 2007 U.S. Dist. LEXIS 52566.

[20] While DOL opinion letters are not binding, they carry "considerable weight." Stern v. Int'l Bus. Mach. Corp., 326 F. 3d 1367, 1372 (11th Cir. 2003). See also Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1238 (11th Cir. 2002) (noting that DOL opinion letters "constitute a body of experiences and informed judgment to which courts and litigants may properly resort for guidance").

spent "with customers inside the model home performing sales support activities."

Id.

The Wage and Hour Division has stated that "[s]o long as a salesman customarily and regularly goes to the site of the property or to prospects as a part of making his sales, this requirement for outside sales work would be met." (See Wage and Hour Div. Op. Letter 2007-1, January 25, 2007, attached as Ex. D.)  In a 2006 Opinion Letter, the Wage and Hour Division found that "[b]y meeting clients outside of the employer's place of business in order to initiate sales, such as at the clients' homes, the 'sales force' loan officers fulfill the 'outside' requirement of the outside sales exemption."  (See Ex. B.)

Defendant's consultants are engaged away from the Design Centers making sales at customers' homes.[21]  At the end of a customer's initial visit into a Design Center, consultants "almost always" schedule an appointment at the customer's home.  (PL. DEP. at 140, line 2; 152, line 22.)  During the home visits, the consultants perform a number of critical sales-related tasks.[22]  Consultants also on occasion return to their customers' homes following an in-store presentation

---

[21] From the very beginning of the consultants' employment with the Company at their initial training, they are trained on how to make home visits and told that home visits are a regular part of the consultant's job.  (PL. DEP. at 154, line 21.)

[22] These tasks include: examining the room in question, taking measurements, getting a feel for the project the customer wants to undertake, asking if there is anything in the home the customer wishes to work around, asking the customer's color preferences, getting a sense of the customer's style, preparing floor plans and asking the customer if there is any item they would absolutely hate in the room.  (See generally PL. DEP. at 138-40, 145.)

resulting from a home call.  (PL. DEP. at 148, line 18; WD at 63, lines 12-13.)

Consultants also make home visits as service calls, to handle complaints, to "put

out a fire" for a customer that may want to return an item, to take fabrics out if a

customer's preferences have changed, or to bring accents for the home in order to

provide the client with a picture of the design the consultant has in mind.  (PL.

DEP. at 138, lines 9-12; 150, lines 6-12; 138, lines 13-19.)  In all of these

instances, Defendant's consultants, including Plaintiff, are engaged in making sales

away from the employer's place of business.

     The amount of time Design Consultants spend away from the Design

Centers satisfies the "customarily and regularly" requirement.  According to

Plaintiff, she made multiple home visits per week, as the consultants have a

"minimum standard" requirement to visit two homes per week.  (PL. DEP. at 138,

lines 2-3.)  According to Plaintiff, it was not uncommon for her to make ten to

twelve home visits in a month.[23]  (PL. DEP. at 139, lines 9-10.)   "Twelve home

visits in a month" cannot possibly be characterized as an "isolated or one-time

---

[23] The amount of time spent furthering outside sales efforts also counts as time that satisfies the
"customarily and regularly" requirement.  Work that is "incidental to and in conjunction with the
employee's own outside sales or solicitations" is expressly included as "exempt outside sales
work."  29 C.F.R. § 541.500.  Plaintiff testified that at a minimum, she spent five hours preparing
for each home visit by finalizing the floor plan, going through the catalog to select furniture,
collections, colors, fabrics, patterns and pieces, choosing fabrics that coordinate, recommending
paint colors, selecting carpet and accents, and preparing a presentation table for the presentation
day.  (PL. DEP. at 146-47, line 22- line 9.)

task."  Plaintiff herself characterizes the home visit as a critical component of nearly every sales call she made.[24]

Sales made as follow-ups to house visits, including sales made during in-store presentations are also exempt outside sales activity.  DOL Regulations state that work that is "directly and closely related to the performance of exempt work" is also considered exempt work.  29 CFR § 541.703.  The phrase "directly and closely related" is defined as "tasks that are related to exempt duties and that contribute or facilitate performance of exempt work."  Id.  The Regulations specifically state that creating presentations is work "directly and closely related to exempt work."  Id.  Follow up in-store presentations to home visits, as well as sales to customers that had a home visit meet the DOL's definition of "directly and closely related."  As a result, this work qualifies as exempt outside sales work.

Based on the DOL's definition of "directly and closely related," 51% ($186,621.75) of Plaintiff's sales were made either during a house call or were "directly and closely related" to a house call.  51% of Plaintiff's sales were made either during an in-store presentation following a house call, or to a customer for whom Plaintiff made a house call.  (See Affidavit of Corey Whitely at ¶¶ 8-9.)

Where the majority of Plaintiff's sales are made either during or as a direct

---

[24] Lynda Stout confirmed Plaintiff's assessment that home visits are a customary and regular part of the Design Consultant's job duties.  According to Stout, the majority of Design Consultants' work hours should be spent outside the Design Center.  (SD at 26-27, line 25-line 1).

result of a home visit, there can be no doubt that she is "customarily and regularly engaged away from the employer's place of business in performing sales duties." Where a majority of employees' compensation comes from commissions earned during outside sales activity, such salespeople are exempt.  See Fields v. AOL Time Warner, Inc., 261 F. Supp. 2d 971, 975 (W.D. Tenn. 2003).

Plaintiff's job duties satisfy all the requirements of the outside sales exemption as a matter of law based on the factual record.  Defendant is entitled to summary judgment dismissing Plaintiff's claims for overtime because she is exempt from the FLSA's requirements as a matter of law.

## IV.   CONCLUSION

For the reasons stated above, Ethan Allen is entitled to summary judgment on all of Plaintiff's claims.

Respectfully submitted this 28th day of November, 2008.

/s/ Eric R. Magnus
Eric R. Magnus
Georgia Bar No.: 801405
ATTORNEYS FOR DEFENDANT

JACKSON LEWIS LLP
1155 Peachtree Street, NE
Suite 1000
Atlanta, Georgia 30309
Tel:   (404) 525-8200
Fax:   (404) 525-1173
Email:  magnuse@jacksonlewis.com

By their signature above, counsel for Defendant represent that, pursuant to Local Rules 5.1B and 7.1D, this motion and memorandum were prepared in the font of Times New Roman, 14 point.

# IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| **DANA LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No.** |
| **v.** | ) | **3:07-CV-108-JTC** |
| | ) | |
| **ETHAN ALLEN RETAIL, INC.,** | ) | |
| **a Delaware corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

I certify that on November 28, 2008, I electronically filed the foregoing **DEFENDANT ETHAN ALLEN'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

> Kimberly N. Martin
> Thomas F. Martin
> MARTIN & MARTIN, LLP
> 3481 Lakeside Drive, Suite 805
> Atlanta, Georgia 30326

> s/ Eric R. Magnus
> Eric R. Magnus