IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| DANA LEE,<br><br>　　Plaintiff,<br><br>　　v.<br><br>ETHAN ALLEN RETAIL, INC., a<br>Delaware corporation<br><br>　　Defendant. | CIVIL ACTION<br>NO. 3:07-CV-108-JTC |

# O R D E R

Pending before the Court are the parties' cross-motions for summary judgment [# 91 & 100]. Plaintiff brought this action against her former employer, Defendant Ethan Allen Retail, Inc. ("Ethan Allen"), pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff contends that she was denied overtime wages in violation of the FLSA. Defendant Ethan Allen contends that Plaintiff was exempt from the overtime compensation requirements. The Court **GRANTS** Defendant Ethan Allen's Motion for Summary Judgment [# 91].

## I.　Factual Background

Where a party disputes a specific fact and points to evidence in the record supporting its version of events, the Court has viewed such evidence and factual inferences in the light most favorable to the nonmoving party, as

required when considering a motion for summary judgment. See United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc); see also LR 56.1B(2), NDGa. Most of the facts in this case, however, are not in dispute.

Defendant Ethan Allen owns and operates Ethan Allen Design Centers ("Design Centers") throughout the United States. (Def.'s Statement of Material Facts ("Def.'s SMF") ¶ I.2; Pl.'s Resp. to Def.'s SMF ("Pl.'s Resp.") ¶ I.2.) These Design Centers are retail establishments, which sell Ethan Allen home furnishing products. (Def.'s SMF ¶ I.1, 5; Pl.'s Resp. ¶ I.1, 5.)

Plaintiff began working as a Design Consultant on August 6, 2006, at Ethan Allen's Peachtree City, Georgia Design Center. (Def.'s SMF ¶ II.1; Pl.'s Resp. ¶ II.1.) Plaintiff worked as a Design Consultant throughout her employment with Ethan Allen. (Def.'s SMF ¶ II.2; Pl.'s Resp. ¶ II.2.) As a Design Consultant, Plaintiff's primary job responsibility is selling Ethan Allen home furnishing products. (Def.'s SMF ¶ II.3; Pl.'s Resp. ¶ II.3.)

Design Consultants, including Plaintiff, are paid on a commission basis. (Def.'s SMF ¶ IV.1; Pl.'s Resp. ¶ IV.1.) They are never paid a salary. (Def.'s SMF ¶ IV.2; Pl.'s Resp. ¶ IV.2.) After an initial two week training period, Plaintiff began making sales and earning commissions. (Def.'s SMF ¶ II.5-6; Pl.'s Resp. ¶ II.5-6.)

Ethan Allen paid Plaintiff according to its written Design Consultant Compensation Plan ("Compensation Plan"). (Def.'s SMF ¶ IV.4; Pl.'s Resp. ¶ IV.4.) Pursuant to this Compensation Plan, Design Consultants earn a minimum of 7% commission on net written sales per fiscal month. (Def.'s SMF ¶ IV.7; Pl.'s Resp. ¶ IV.7.) The commission increases to 8% if the Design Consultant has sales of at least $45,000, 8.5% at $55,000, and 9% at $70,000. (Def.'s SMF ¶ IV.8-11; Pl.'s Resp. ¶ IV.8-11.) Design Consultants earn a commission on every dollar of their sales; there are no caps on the amount of commissions a Design Consultant can earn. (Def.'s SMF ¶ IV.13-14; Pl.'s Resp. ¶ IV.13-14.)

During the first four months of employment, Ethan Allen pays its Design Consultants through a <u>non-recoverable</u>, bi-weekly draw. (Def.'s SMF ¶ IV.30; Pl.'s Resp. ¶ IV.30.) Every month Ethan Allen reduces the Design Consultant's commissions by the amount of the draw. (Def.'s SMF ¶ IV.19; Pl.'s Resp. ¶ IV.19.) The Design Consultant earns commissions on sales that exceed her draw. Because the draw is non-recoverable, Design Consultants do not have to repay Ethan Allen if the amount of their draw exceeds their commissions during the month. (Def.'s SMF ¶ IV.31; Pl.'s Resp. ¶ IV.31.)

After the initial four month period, however, Ethan Allen pays its Design Consultants through a bi-weekly, <u>recoverable</u> draw. (Def.'s SMF ¶ IV.16; Pl.'s Resp. ¶ IV.16.) Accordingly, if a Design Consultant does not earn

3

enough in commissions to cover the draw, the Design Consultant carries forward a deficit, which she owes to Ethan Allen. (Def.'s SMF ¶ IV.22; Pl.'s Resp. ¶ IV.22.) Ethan Allen then reduces any deficit from prior months by the amount that her commissions exceeded the draw. (Def.'s SMF ¶ IV.22-24; Pl.'s Resp. ¶ IV.22-24.)

Plaintiff received a bi-weekly draw of approximately $1,100. (Def.'s SMF ¶ IV.17; Pl.'s Resp. ¶ IV.17; Pl.'s Statement of Material Undisputed Facts ("Pl.'s SMF") ¶ C.3.) Although Plaintiff earned commissions that exceeded her draw in four of the fourteen months she was employed at Ethan Allen, she never received an additional commission payment beyond her draw because throughout her employment at Ethan Allen she maintained a cumulative deficit as a result of her failure to earn enough commissions to cover her draw in prior months. (Def.'s SMF ¶ IV.25, 27, 29; Pl.'s Resp. ¶ IV.25, 27, 29.) When Ethan Allen terminated, Plaintiff she had an accumulated deficit of $4,610.14. (Pl.'s SMF ¶ C.24.)

On her time sheets, Plaintiff reported working between 40 and 43 hours per week. (Def.'s SMF ¶ V.19; Pl.'s Resp. ¶ V.19.) Plaintiff reported working over 40 hours in a week on approximately 40 occasions during her employment at Ethan Allen. (Def.'s SMF ¶ V.20; Pl.'s Resp. ¶ V.20.) Plaintiff, however, contends that there may have been days when she worked more hours than she reported. (Def.'s SMF ¶ V.26; Pl.'s Resp. ¶ V.26.) Plaintiff

4

estimates that she worked approximately 200-250 hours of overtime throughout her fourteen months of employment. (Def.'s SMF ¶ V.29; Pl.'s Resp. ¶ V.29.) Plaintiff did not work more than 65 hours in any workweek. (Def.'s SMF ¶ V.36; Pl.'s Resp. ¶ V.36.)

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) defines the standard for summary judgment: courts should grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' . . . and draw 'all justifiable inferences . . . in his favor . . . .'" Four Parcels, 941 F.2d at 1437. The court may not weigh conflicting evidence nor make credibility determinations. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993), reh'g denied, 16 F.3d 1233 (1994) (en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

5

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Rule 56(c), however, mandates that the a court enter summary judgment against a party who fails to establish the existence of an essential element of her case when the party bears the burden of proof at trial. Konikov v. Orange County, Fla., 410 F.3d 1317, 1321 (11th Cir. 2004).

### III. Analysis

Generally, an employer must pay its employees overtime compensation of one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001). The FLSA, however, exempts a number of categories of employees from this general overtime requirement. See 29 U.S.C. § 207. One such exemption is the retail or service establishment exemption. 29 U.S.C. § 207(i). This exemption provides in pertinent part that:

> [n]o employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).

The retail or service establishment exemption applies where: (1) the employee was employed by a retail or service establishment; (2) the employee's regular rate of pay was more than one and one-half times the minimum hourly rate; and (3) more than half of the employee's compensation comes from commissions. 29 U.S.C. § 207(i); 29 C.F.R. § 779.412; see also Schwind v. EW & Assocs. Inc., 371 F. Supp 2d 560, 563 (S.D.N.Y. 2005). As the employer, Defendant bears the burden of proving the applicability of this exemption by "'clear and affirmative evidence.'" Klinedinst, 260 F.3d at 1254 (quoting Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992)). Moreover, the Court construes exemptions from the overtime provisions of the FLSA narrowly against the employer. Birdwell, 970 F.2d at 905.

Plaintiff concedes that Defendant is a retail establishment and that her regular rate of pay was in excess of one and one-half times the minimum hourly rate applicable to her, thus satisfying the first two prongs of the test. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5; Pl.'s Mot. for Summ. J. at 5.) The dispute in this case centers around the final requirement.

To rely on the retail or service establishment exemption, Defendant must demonstrate that more than half of Plaintiff's compensation for a representative period of at least one month represents commissions on goods or services. See 29 U.S.C. § 207(i). Section 207(i) provides that:

> In determining the proportion of compensation representing commissions, *all earnings resulting from the application of a bona fide commission rate shall be deemed commissions* on goods and services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i) (emphasis added). Accordingly, in determining whether more than half of Plaintiff's compensation came from commissions, the Court must also determine whether the commissions paid to Plaintiff were the result of "the application of a bona fide commission rate." <u>Id.</u> Provided that the employer's compensation plan is a bona fide plan, any compensation calculated as commissions according to the plan will count as commissions, even if the amount of commissions may not equal or exceed the guarantee or draw in some weeks. 29 C.F.R. § 779.416(b); <u>Erichs v. Venator Group, Inc.</u>, 128 F. Supp 2d 1255, 1259 (N.D. Cal. 2001). Conversely, even where an employer characterizes the entirety of an employee's earnings as commissions, the employer may not rely on the retail and service establishment exemption unless the commissions are calculated pursuant to a bona fide commission plan. <u>See</u> <u>generally</u> <u>Erichs</u>, 128 F. Supp 2d at 1260 (explaining that "some payment plans that apparently are commission plans on their face may reveal themselves to be something different upon closer inspection."). Although Ethan Allen categorized 100% of Plaintiff's earnings as commissions, Plaintiff contends that Ethan Allen cannot demonstrate that more than half of her

8

compensation came from commissions because her earnings did not result from the application of a bona fide commission rate.

Congress did not define the meaning of "bona fide commission rate." Herman v. Suwannee Sifty Stores, Inc., 19 F. Supp 2d 1365, 1369 (M.D. Ga. 1998) (Sands, J.); Erichs, 128 F. Supp 2d at 1259. Black's Law Dictionary defines "bona fide" as "made in good faith." BLACKS'S LAW DICTIONARY 186 (8th ed. 2004). Courts have applied this definition to the term bona fide commission rate in Section 207(i). See Herman, 19 F. Supp 2d at 1370 ("Congress . . . provided that to use this commission-based exception, the commission rate must be set in good faith."). Therefore, "[t]he inquiry is whether the employer set the commission rate in good faith." Enrichs, 128 F. Supp 2d at 1259.

The Code of Federal Regulations provides two examples of commission rates that are not bona fide. See 29 C.F.R. § 779.416(c). First, a commission rate is not bona fide where "the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee)." Id. Second, an employer's commission plan is not bona fide where "the employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment . . . can always be expected to

9

make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota." Id.

These two examples are not exhaustive. See Erichs, 128 F. Supp 2d at 1260. The Court must examine Defendant's particular commission rate and determine whether the plan is bona fide or set in good faith. As the Court explained in Herman:

> Congress did not state that any commission rate was fine . . . Instead, it limited the exception to ensure employers would create a commission rate in good faith. Since Congress did not specify a definition of 'bona fide[,]' . . . the DOL did so through section 779.416(c). The DOL's interpretation is consistent with the purpose of passing an exception to overtime by paying commissions. The whole premise behind earning a commission is that the amount of sales would increase the rate of pay. Thus, employees may elect to work more hours so they can increase their sales, and in turn, their earnings. When a commission plan never affects the rate of pay, the purpose behind using a commission rate also fails.

Herman, 19 F. Supp 2d at 1370; Erichs, 128 F. Supp 2d at 1260. By requiring that a commission rate is bona fide, "Congress apparently envisions a smell test, one that reaches beyond the formal structure of the commission rate and into its actual effects and the purpose behind it." Erichs, 128 F. Supp 2d at 1260.

The commission rate in this case passes this "smell test." Defendant set the commission rate in good faith; the commission rate was not a superficial attempt to categorize Plaintiff's earnings as commissions in order to avoid

having to pay her overtime compensation. Cf. Id. at 1260-61 (finding that the defendant's commission rate plan was not made in good faith because it was an attempt to replicate the prior, "legally nebulous" plan and would not increase sales); Herman, 19 F. Supp 2d at 1372 (holding that store managers who never received more than the guaranteed rate or received more than the guaranteed rate only once a year were not exempt under the retail and service exemption). Plaintiff's compensation was entirely commission based. She received a commission ranging from 7% to 9% depending on the volume of her sales. Every two weeks, Plaintiff received a recoverable draw. After the initial four months of employment, if Plaintiff did not have enough sales to cover the draw, she went into deficit. Ethan Allen then deducted any earnings from commissions exceeding the draw from this deficit.

Ethan Allen's compensation plan provided Plaintiff with a meaningful opportunity to elect to work more hours to increase her sales and earnings. Plaintiff's monthly commissions exceeded her draw four times. Although Defendant used these funds to reduce Plaintiff's accumulated deficit from prior months, the fact that Plaintiff could exceed her draw by increasing sales demonstrates her ability to impact her compensation by increasing sales. Unlike the example in the Code of Federal Regulations, Plaintiff did not always or almost always earn the same fixed amount each week; Plaintiff's earnings fluctuated based on the amount of her sales. Because all of

11

Plaintiff's earnings resulted from the application of a bona fide commission rate, and are commissions within the meaning of Section 207(i), Defendant met its burden of demonstrating that one of the exemptions to the FLSA's general overtime requirements applies to Plaintiff. Accordingly, the Court **GRANTS** Defendant's motion for Summary Judgment [# 91].

IV. **Conclusion**

The Court **GRANTS** Defendant's Motion for Summary Judgment [# 91]. The Court **DIRECTS** the Clerk to enter judgment in favor of Defendant Ethan Allen Retail, Inc. and against Plaintiff Dana Lee. The Court **DIRECTS** the Clerk to Close this case.

**SO ORDERED**, this __27th__ day of July, 2009.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE